

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00559-CR

Tyler Keith **ZIEGLER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR4425
Honorable Ray Olivarri, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Jason Pulliam, Justice

Delivered and Filed:  October 5, 2016

AFFIRMED

Tyler Keith Ziegler appeals his convictions for assault with a deadly weapon and endangering a child.  He argues the trial court erred by denying (1) his motion for relief regarding the State's alleged failure to disclose relevant evidence; (2) his motion for an instructed verdict on the child-endangerment charge; and (3) his request for a mistake of fact instruction in the jury charge.  We affirm.

**BACKGROUND**

Ziegler, his girlfriend Rachall, and their child C.Z. (born August 2013) were living with Ziegler's father Ronnie and stepmother Jennifer. One day when Ronnie and Jennifer were arguing, Jennifer asked Ziegler to call the police. Ziegler said he would and Ronnie became angry. Ronnie and Ziegler went outside and started physically fighting. During the fight, Rachall yelled at Ronnie to stop, expressing her concern that Ronnie might kill Ziegler. Ziegler was taken to the hospital that night for treatment of injuries sustained during the fight.

The following morning after Ziegler returned home, Ziegler, Rachall, and C.Z. were in their bedroom. Rachall told Ziegler she had talked to Jennifer about why she and Ronnie were fighting. During her conversation with Jennifer, Rachall learned Jennifer had a sexually transmitted infection. Rachall became concerned because Ziegler told her that he and Jennifer had slept together. Ziegler, who was lying on the bed, told Rachall to come to the bed and talk to him, repeatedly asking her to share details of what Jennifer had told her. Rachall, who was holding C.Z., refused because Ziegler was holding a long knife.

Rachall testified she told Ziegler she did not want to fight about him sleeping with Jennifer. She testified Ziegler threw the knife he was holding against the wall. When Ziegler left the bed to grab the knife, Rachall and C.Z. went to the bed and lay down. According to Rachall, Ziegler placed the knife on the dresser and then sat on a chair in the room. Rachall testified Ziegler had a box cutter in hand, and when he reached over C.Z., the box cutter cut Rachall on her thigh. Rachall said Ronnie and Jennifer were on the other side of the house during the incident.

Ziegler testified in his defense. He stated that as he and Rachall were discussing Rachall's conversation with Jennifer, he heard Jennifer and Ronnie arguing in the living room. Ziegler said he then heard Ronnie say, "Tyler, Tyler, is that you? Are you up? . . . Come on, let's get back in the backyard. Let's . . . finish the fight." Ziegler stated he pulled a box cutter out of his pocket

because he was afraid Ronnie was going to hurt him. He explained that, while he was sitting in the chair, he pushed off the bed, stumbled because of his injuries from the prior day's fight with Ronnie and the morphine the hospital had given him, and "that is when the razor blade scratched [Rachall] or cut her on the leg." Ziegler said he believed Ronnie was on his way to Ziegler's bedroom. He testified Ronnie had threatened to kill him during the prior day's fight.

A grand jury indicted Ziegler for assaulting Rachall with a deadly weapon and for placing C.Z. "in imminent danger of bodily injury by swinging a box cutter at Rachall Kennedy while she was holding the child" (formatting omitted). Ziegler pled not guilty to both charges, and the case proceeded to a jury trial. The jury found Ziegler guilty of assaulting Rachall and endangering C.Z. The jury assessed Ziegler's punishment at six years' confinement for assaulting Rachall and two years' confinement for endangering C.Z. Ziegler appeals.

### MOTION FOR RELIEF

During the State's cross-examination of Ziegler, the State asked him, "You were on the ground and he [Ronnie] was pounding away and she [Rachall] yelled at him to stop, that he was going to kill you, right?" Ziegler responded, "Yes."

After both parties rested their respective cases, Ziegler filed a motion for relief in which he alleged, "Until such question, [Ziegler]'s attorney was never made aware of such a statement by Rachall."[1] The motion also alleged Ziegler served the State with a request for disclosure of all exculpatory, impeachment, or mitigating evidence. In his motion for relief, Ziegler asked the trial court to inspect all of the State's notes "without limitation" and to "turn over" any exculpatory or mitigating evidence. The trial court denied the motion. On appeal, Ziegler argues the trial court

---

[1] The motion was discussed during the charge conference. The State said Rachall's statement was not recorded in a police statement, and she made the statement during a pretrial interview with the prosecutor.

erred because the State's failure to disclose its knowledge about Rachall's statement violated *Brady v. Maryland*, 373 U.S. 83 (1963), and article 39.14 of the Texas Code of Criminal Procedure.

Under *Brady*, the State has a constitutional duty to disclose material, exculpatory evidence to a defendant. *Brady*, 373 U.S. at 87. *Brady* applies to situations in which a defendant discovers after trial that there was information known to the prosecution but unknown to the defense. *United States v. Agurs*, 427 U.S. 97, 103 (1976), *modified on other grounds by United States v. Bagley*, 473 U.S. 667 (1985); *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011). However, the State does not have a constitutional duty to disclose evidence "if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources." *Pena*, 353 S.W.3d at 810. Here, when asked whether Rachall yelled at Ronnie to "stop, that he was going to kill you," Ziegler answered "Yes." Ziegler clearly was present when Rachall made the statement he complains the State failed to disclose. Because Ziegler was aware of Rachall's statement before trial, the State did not have a duty under *Brady* to disclose what she told the State about what she had said to Ronnie. *See id.*

Under Code of Criminal Procedure article 39.14, the State must "disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX. CODE CRIM. PROC. ANN. art. 39.14(h) (West Supp. 2016). Even if the State failed to comply with article 39.14(h)'s requirements, and the trial court erred by denying Ziegler's motion for relief, we must disregard the error unless it affected Ziegler's substantial rights. *See* TEX. R. APP. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole,

has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Conversely, a conviction must be reversed for such error if the reviewing court has "grave doubt that the result of the trial was free from the substantial effect of the error." *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.*

Ziegler argues Rachall's statement was "highly beneficial" to his case and it supported his theory that he grabbed the box cutter because he was afraid of Ronnie. However, Rachall's statement was admitted into evidence through Ziegler's own testimony. The jury therefore heard the evidence Ziegler claims was "highly beneficial" to his case. In closing arguments, Ziegler emphasized his testimony about Rachall's statement and relied on Rachall's statement to support his theory that he was afraid of Ronnie. On the other hand, the jury also heard Rachall's testimony that Ronnie and Jennifer were on the other side of the house when Ziegler cut her. The jury, in finding Ziegler guilty, believed Rachall's testimony that Ziegler purposefully cut her with a box cutter. Having reviewed the entire record and deferring to the jury's credibility determinations, we hold the trial court's denial of Ziegler's motion for relief did not have a substantial and injurious effect or influence on the jury's verdict. *See King*, 953 S.W.2d at 271.

## MOTION FOR INSTRUCTED VERDICT

Ziegler argues the trial court erred by denying his motion for instructed verdict on the charge of endangering a child. The indictment alleged Ziegler intentionally, knowingly, and recklessly engaged in conduct that placed C.Z. in imminent danger of bodily injury by swinging a box cutter at Rachall "while she was holding the child."[2] On appeal, Ziegler contends there is no

---

[2] The jury charge tracked the same language.

evidence that he placed C.Z. in imminent danger of bodily injury by swinging a box cutter at Rachall while she was holding the child because there is no evidence Rachall was holding C.Z.

The standard of review applicable to a motion for instructed verdict is the same used under a legal sufficiency review. *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd). Under the legal sufficiency standard, we must review all the evidence in the light most favorable to the verdict to decide whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Id.* The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to testimony, and we must defer to its determinations. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury may choose to accept or reject all or part of the testimony, and we presume the jury resolved all conflicts in the evidence in favor of the verdict. *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012). After reviewing the evidence in this light, "we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances. *Byrd*, 336 S.W.3d at 248. A variance occurs when there is a "discrepancy between the allegations in the indictment and the proof offered at trial." *Id.* at 246. A variance between the wording of an indictment and the evidence presented at trial is fatal to the State's case only if it is material and prejudices the defendant's substantial rights. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). "When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him

to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Id.* Allegations giving rise to immaterial variances between the indictment and the proof may be disregarded in the hypothetically correct charge. *Id.*

"[A] hypothetically correct jury charge encompasses statutory elements of the offense as modified by the State's indictment." *Hinojosa v. State*, 433 S.W.3d 742, 759 (Tex. App.—San Antonio 2014, pet. ref'd). In this case, a "person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." TEX. PENAL CODE ANN. § 22.041(c) (West 2011). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(8) (West Supp. 2016). "Imminent" means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *See Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (construing "imminent" bodily injury in § 29.02(a)(2) of the Penal Code "to require a present, not a future threat"). The offense of endangering a child requires that the child be in imminent danger, but does not require a child to be in any particular physical location. *See* TEX. PENAL CODE ANN. § 22.041(c).

Rachall testified she, Ziegler, and C.Z. were in the bedroom. She stated she was standing and holding C.Z. before Ziegler threw the long knife against the wall. Rachall testified she then "laid my son on the bed and laid beside him." She stated she was lying against the wall and the baby was asleep on the "open side of the bed" between Rachall and Ziegler. Rachall testified Ziegler had to reach over the child with the box cutter in order to cut her. Rachall was asked on cross-examination whether she was holding the child and she responded she was "lying next to him." Although Ziegler contradicted her testimony and stated the child was up against the wall

during the incident, we presume the jury resolved this conflict in the evidence in the State's favor. *See Merritt*, 368 S.W.3d at 525-26. We hold a rational jury could have found—regardless of whether Rachall was holding C.Z.—that Ziegler placed C.Z. in imminent danger when Ziegler reached over C.Z. to cut Rachall with the box cutter. Any variance between Rachall holding C.Z. and not holding C.Z. gives rise to an immaterial variance, which we may disregard. *See Gollihar*, 46 S.W.3d at 257. Therefore, the trial court did not err by denying Ziegler's motion for instructed verdict.

### MISTAKE OF FACT INSTRUCTION

Ziegler asserts the trial court erred by denying his request for a mistake of fact instruction. A defendant is entitled to a "requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or is not credible." *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). "While the evidence may be weak or contradicted, there must be at least some evidence to support the defense as a rational alternative to the defendant's criminal liability." *Id.* This rule is designed to ensure that the jury, not the judge, will decide the relative credibility of the evidence. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991).

Mistake of fact is a defense to prosecution. TEX. PENAL CODE ANN. § 8.02(a) (West 2011). A mistake of fact occurs when "the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." *Id.* The Penal Code defines a "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2016). When an accused presents evidence to raise the issue of mistaken belief as to a culpable mental state element of the offense, he is entitled to a defensive instruction on mistake of fact. *Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999). Therefore, the issue before the trial

court was whether Ziegler's purported belief, if accepted as true, negated the culpability required for this offense.

Ziegler was charged with "intentionally, knowingly or recklessly stabbing" Rachall, and "intentionally, knowingly, or recklessly engag[ing] in conduct" that placed C.Z. in imminent danger of bodily injury. Ziegler contends his testimony raised a mistake of fact defense because he was reasonably mistaken about whether Ronnie was on his way to Ziegler's bedroom to start another fight. Even if Ziegler was mistaken about where Ronnie was in the house, this mistaken belief would not negate the kind of culpability required for either of the two offenses. Both offenses required evidence that Ziegler act "intentionally, knowingly, or recklessly." The evidence supports only two accounts of the incident. Rachall's account was that Ziegler purposefully took a box cutter and cut her. Ziegler's account was that he stumbled and accidentally cut Rachall with the box cutter. If the jury believed Ziegler purposefully cut Rachall, thereby placing C.Z. in imminent danger, then Ziegler's mistaken belief that Ronnie was coming to start a fight with him would not negate the culpable mental state for either offense. If the jury believed Ziegler accidentally cut Rachall, then Ziegler would lack the culpable mental state for both offenses regardless of whether Ronnie was coming to start a fight or was on the other side of the house. Because no evidence supports that Ziegler's mistake of fact negated the culpable mental state required for both offenses, the trial court did not err by denying Ziegler's request for a mistake of fact instruction. *See id.*

## CONCLUSION

We overrule Ziegler's issues on appeal and affirm the trial court's judgments.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH