

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD–1632-11

**PAUL KRAJCOVIC, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### DENTON COUNTY

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. PRICE, J., filed a concurring opinion. JOHNSON, J., concurred.

### O P I N I O N

Appellant, Paul Krajcovic, was charged with a murder committed on or about August 28, 2007. A jury found him guilty and sentenced him to fifty-five years' confinement. He appealed, arguing that the trial court erred in refusing to grant his request for a jury instruction on the Castle Doctrine, which went into effect on September 1, 2007. The court of appeals reversed the trial court's judgment and remanded the case

for a new trial. *Krajcovic v. State*, 351 S.W.3d 523 (Tex. App.–Fort Worth 2011). We granted the State's petition for discretionary review to address the following two grounds for review:

> (1) Whether the Court of Appeals' panel majority improperly applied the law on defensive instructions where there was no evidence that supported a rational inference that the requested defensive instruction on the "Castle Doctrine" applied to the case.
>
> (2) Whether the Court of Appeals' panel majority erred by holding the lack of the requested instruction was harmful where there was no evidence whatsoever of "retreat," or even the possibility thereof, and where a self-defense claim would have failed regardless of whether Appellant was legally required to retreat or not.

We hold that the court of appeals erred in failing to consider whether the evidence supports a rational inference that the Castle Doctrine applies to this case. We will reverse.

## FACTS

On September 6, 2007, Appellant's father and sister went to the police to report that Appellant had told them that he had shot someone in his home. Officers went to Appellant's house to investigate and smelled a strong "odor of death" from outside the house. When they went inside, they discovered the body of Jerrod Deshun "Shawn" Scales on the floor of the master bathroom. Shawn and Appellant were known drug users and dealers who often worked together.[1] Because Shawn was found in front of the toilet

---

[1]Throughout the trial and appeal, the victim and witnesses have been referred to by their first names. We too will refer to them by their first names for the sake of consistency.

with his pants on, his penis out of the fly of his boxers, and the toilet seat raised, officers investigating the scene concluded that the murder occurred as Shawn was using the bathroom. According to the officers, there was no evidence of a break-in or a scuffle and no evidence that the body had been moved and placed in the bathroom. The medical examiner testified that the cause of death was a gunshot wound to the head from a small-caliber weapon. The body was "markedly decomposed," and there were maggots covering his face and flies present at the scene. The medical examiner could not determine the exact time of death but testified that it was at least 36 hours before the time that the body was discovered and that the body was well past rigor mortis.

The day after the body was found, Appellant provided a written statement stating that he accidently shot Shawn during a struggle. Appellant claimed that Shawn was threatening to kill him and his son because Appellant owed Shawn $200 and that he fought Shawn in order to save his and his child's lives. Appellant stated that the gun went off during the scuffle, and Shawn fell onto the bed. Appellant said he then got his son and left the house.

Appellant's 10 year-old son, DK, testified that, on the last night he stayed with his father, they were in the bedroom when they heard glass break. DK hid under the covers, and Appellant left the room to go see what caused the noise. DK said he heard a gunshot, then his father came back and got him, and they left the house. DK said that he did not

remember the date of the incident, only that it was prior to his starting school that year.[2]

Shawn's friend Darin Robinson testified at trial that the last time he saw Shawn was the last week of August. He said he remembered when it was because it was two days after he found out that his mother had cancer and a week before his birthday, which was on September 3rd. Darin testified that he went to Appellant's house at around 1 a.m. to get a cigarette and stayed for about an hour smoking crack with Appellant and Shawn. He said that they asked him to leave at a little after 2 a.m. because they had some girls coming over. He said that it was on a Tuesday, and he guessed that it was the 25th or 26th of August.

Another friend, Wayne Shoffner, testified that the last time he had seen Shawn was on a Monday, but that the Monday could have been in August, September, or October.[3] He further testified that it had been the same day that Darin had gone to

---

[2]There was testimony that although school started in late August, Appellant failed to enroll DK in school, and he missed the beginning of the school year.

[3]Wayne's testimony was:
Q: Now, specifically talking about the last time you saw Shawn, do you remember about what day that was?
A: I knew it was on a Monday. I couldn't tell you what the date was, but it was on a Monday.
Q: Was that in late August?
A: It might have been, yeah.
Q: Do you remember if --
A: It might have been in late August or early October. I'm not for sure. It was between one of those two.
Q: Late August, early --
A: --October.
Q: October? What about September?
A: It could have been there. I don't know. It's been a while.

Appellant's house to get a cigarette.[4]

A narcotics officer who was watching Appellant's house stated that the last time he had seen Shawn was at around 5:30 p.m. on August 28th when Appellant and Shawn entered Appellant's house. The officer testified that he had not conducted further surveillance on the residence after that time and did not go back to the house until the day Shawn's body was found.

Shawn's mother testified that Shawn usually called her if he was not going to be home by 10 p.m., but he failed to do so after August 27th. She stated that Shawn's brother was looking for him on August 28th but he was not home and was not at work. As a result, she attempted to file a missing persons report on August 28th but was instructed by the police to wait three days before filing.

Objecting to the court's proposed jury charge, Appellant stated, "We believe the charge should also contain the Castle Law Doctrine where Mr. Krajcovic had no duty to retreat in his own home in protecting his own home or his son or himself." The trial court denied the request and instructed the jury that a person is justified in using deadly force against another "if a reasonable person in defendant's situation would not have retreated."

## PROCEDURAL HISTORY

A jury convicted Appellant of murder and assessed his punishment at fifty-five years' confinement. On appeal, Appellant argued that the trial court erred in submitting

---

[4]The court of appeals noted that the Monday that Wayne was referencing would have been August 27, 2007. *Krajcovic*, 351 S.W.3d at 525.

to the jury a "charge that improperly limited it to finding that an offense occurred prior to September 1, 2007." Before September 1, 2007, deadly force under Texas Penal Code Section 9.32(a) was justified only "if a reasonable person in the actor's situation would not have retreated." The Castle Doctrine was made effective on September 1, 2007. It relieves a person of the duty to retreat when he is justified in using deadly force against another if (1) he has a right to be present at the location where the deadly force is used, (2) he has not provoked the person against whom the deadly force is used, and (3) he is not engaged in criminal activity at the time that the deadly force is used. *See* TEX. PENAL CODE §9.32(c). Appellant argued that the trial court presumed that the date of death was in August and erred in instructing the jury on the law only as it stood prior to September 1, 2007. The court of appeals initially affirmed the decision of the trial court and held that there was no error in the jury instructions. The court of appeals reasoned that there was no affirmative evidence that the offense occurred after August 28, 2007 that would mandate a jury issue on which version of the self-defense law applied to the case. *Krajcovic v. State*, No.2-09-020-CR, 2010 Tex. App. LEXIS 6168 (Tex. App.–Fort Worth July 29, 2010) (not designated for publication).

Appellant filed a motion for en banc reconsideration. The court of appeals denied the motion, but withdrew the original opinion and judgment and substituted a new opinion reversing the trial court's judgment and remanding the case for a new trial. Upon reconsideration, the court of appeals held that there was no "clear-cut" date of death and

that the trial court erred in refusing to give the instruction. *Krajcovic*, 351 S.W.3d at 530.

The court of appeals stated that if any evidence from any source raised a defense, it must

be given, regardless of the strength of the evidence, and that it is not the court's function

to determine the credibility or weight of the evidence. *Id*. at 528-29. The court concluded

that Appellant was harmed by the failure to give the Castle Doctrine instruction because

the only self-defense instruction given to the jury was about whether a reasonable person

would not retreat. *Id*. at 530. The court reasoned that, because there was no evidence of

retreat and no evidence that a reasonable person would not have retreated, the jury may

have convicted Appellant due to his failure to retreat when it is possible that he had no

duty to retreat. *Id*.

The State filed a petition for discretionary review, which we granted to consider

whether the court of appeals improperly applied the law on defensive instructions where

there was no evidence that supported a rational inference that the requested defensive

instruction on the Castle Doctrine applied to the case, and whether the court of appeals

erred by holding that the lack of the requested instruction was harmful.

## ARGUMENTS OF THE PARTIES

The State argues that there is no evidence that would support a rational inference

that the requested instruction on the Castle Doctrine applies to this case. The State agrees

that a jury instruction should be given when the accused presents affirmative evidence

that supports a defense, but says that here there was no evidence upon which a rational

jury could have based a belief that the murder took place in September. The State argues that Appellant was not harmed by the trial court's failure to instruct the jury on the Castle Doctrine because no evidence related to the concept of retreat was raised at trial. The State says that whether Appellant had a duty to retreat had no bearing on the verdict because the jury clearly rejected the idea that the killing was self-defense. According to the State, the evidence did not support self-defense because the victim was not shot at close range, there were no victim fingerprints on the gun, and there was no evidence of a struggle.

Appellant argues that a defendant is entitled to an instruction on every defensive issue raised by the evidence, even if it is controverted or conflicts with other evidence. Appellant says that the jury should decide the credibility of the evidence and should decide whether to accept or reject a properly raised defensive theory. According to Appellant, a determination of which self-defense law applied to this case was a fact issue for the jury. Appellant says that the evidence presented by witnesses was enough to warrant an instruction on the post-September 1, 2007 self-defense law. Because the evidence raised a fact issue as to the date of the offense, the jury should have been given the opportunity to determine which of the disputed facts to use in applying the law. Instead, the jury was forced to decide the issue of self-defense under the old doctrine that required retreat. Appellant says that the court of appeals properly concluded that it was error for the trial court to refuse to instruct the jury on the post-September 1, 2007 law on

self-defense.

## ANALYSIS

Texas Penal Code Section 2.03(c) states, "The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." We have said that a judge must give a requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or is not credible. *Juarez v. State*, 308 S.W.3d 398, 404-05 (Tex. Crim. App. 2010); *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007). In *Shaw* we explained that even a minimum quantity of evidence is sufficient to raise a defense as long as the evidence would support a rational jury finding as to the defense. *Id.* We stated that "a defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true."[5] *Id*. While the evidence may be weak or contradicted, there must be at least some evidence to support the defense as a rational alternative to the defendant's criminal liability.

In its most recent opinion, the court of appeals held that because it was not "clear-cut" when the murder was committed, Appellant was entitled to receive the Castle

---

[5]We note that, although the date the murder occurred is not an element of the defense, it determines which version of the self-defense law applies. Due to the unique circumstances of this case, an element of the offense (the date the murder occurred) determines whether a specific defense (the Castle Doctrine) applies. While the disputed date of the offense may be a fact issue for the jury, whether a defensive issue was raised by the evidence presented at trial is a question of law. *Shaw*, 243 S.W.3d at 658.

Doctrine version of the self-defense instruction. *Krajcovic*, 351 S.W.3d at 530. The court of appeals said that Penal Code Section 2.03(c) was satisfied upon a showing of "any evidence from any source" that the Castle Doctrine applied. However, the court of appeals did not consider whether there was affirmative evidence to support a jury finding regarding the defense. *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) (indicating that a lesser-included offense instruction requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense); *Goad v. State*, 354 S.W.3d 443, 447-48 (Tex. Crim. App. 2011) (concluding that there was affirmative evidence directly germane to whether the defendant lacked intent); *Mays v. State*, 318 S.W.3d 368, 387 (Tex. Crim. App. 2010) (failing to give lesser-included offense instruction was not error because there was no affirmative evidence to show that the appellant was reckless or negligent). *See also Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006) (noting that we treat lesser-included offense and requested defensive instructions the same); *Druery v. State*, 225 S.W.3d 491, 512-13 (Tex. Crim. App. 2007) (Keller, P.J., concurring) (stating that a lesser-included offense instruction is a kind of defensive issue).

Here, there was no affirmative evidence that the offense was committed on or after September 1st. At trial, the defense did question the date of the offense. When asking witnesses about the offense, the defense sometimes referred to the shooting as being in September and sometimes referred specifically to August 28th. The defense asked one

witness, "Was that August? September? November? July?" and the witness responded, "That was the end of August." However, when the defense requested the Castle Doctrine instruction, the State replied that the change in the law was September 1, 2007, and that the jury charge already covered self-defense in great detail. The defense did not respond further and did not present the trial court with any evidence or argument that the Castle Doctrine applied to this case.

On appeal, Appellant claims that because the medical examiner could only determine that the victim died at least 36 hours before the body was found, the murder could have been committed in September. Appellant asserts that when he told the police on September 7th that the shooting was "a week ago" he could have meant that "a week" was five days. However, Appellant also states in his brief that in his September 7th statement to police, he said that the incident occurred "last Tuesday, 2:00 am Wednesday morning" and later clarified that it occurred "last Wednesday morning, a week," which would mean that the offense was on August 29th. Although evidence to support a defense may be contradicted, it must be affirmative evidence and cannot be based on speculation or hypothetical "what if" scenarios. Appellant also points to Wayne's testimony that the last time he saw Shawn could have been in August, September, or October. Testimony that the witness may have seen the victim in October is not affirmative evidence that the murder was committed on or after September 1st given that the body was found in September. And a witness's statement that he does not know or

does not remember when he last saw the victim is not affirmative evidence that the murder was committed on or after September 1st.

The evidence raised at trial governs what is included in the charge, and here there is no affirmative evidence to support a rational inference that the murder was committed on or after September 1st. Because there was no evidence to support the defense, the trial court did not err in failing to give the instruction.

**CONCLUSION**

The court of appeals erred in applying the law on defensive instructions where there was no evidence to support a rational inference that the requested instruction applied to this case. Because the trial court did not err in failing to instruct the jury on the Castle Doctrine, we need not consider the State's second ground for review regarding the court of appeals's harm analysis. We reverse the court of appeals and affirm the judgment of the trial court.

Delivered: March 6, 2013

Publish