**REVERSE and REMAND; Opinion Filed July 7, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00085-CR

**JOSE RAMON CRUZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1224443-Q**

## MEMORANDUM OPINION

Before Chief Justice Wright and Justices Myers and Evans
Opinion by Justice Evans

Jose Ramon Cruz appeals his murder conviction complaining the trial court reversibly erred when it denied his request for a jury instruction on the law of self-defense. After reviewing the record, we conclude that the instruction should have been given and the omission of the instruction resulted in some harm. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

### BACKGROUND

Around midnight on October 1, 2012, appellant shot and killed Dihn Ngo in the front of Ngo's home in Garland. At trial, Ngo's youngest brother Hieu Duong, testified along with two friends, Binh Luu and Randy Pope. Duong testified that they had been hanging outside the home with Ngo, eating and drinking beer since the late afternoon. Later that evening, appellant walked

up the driveway and asked to purchase some beer. Appellant did not know anyone at the home. Ngo refused to sell appellant beer, but appellant persisted. According to Duong, Ngo became agitated and started to walk toward appellant, telling him to "Get the f**k off my property; we're not selling you beer." Duong jumped between them and told appellant they could not sell him beer because they did not know him. He also told him that he could purchase beer at the gas station across the street. Appellant left, walking down the street towards some apartments.

After 11 p.m., appellant returned to the home and again asked to buy beer. Luu testified that appellant showed them $5 from his pocket and asked to buy two beers. Luu indicated Ngo was "frustrated" and that he was telling Ngo to calm down. Ngo was standing next to a vehicle in the driveway and told appellant they would not sell him beer, and to get off the property. Ngo walked past Luu toward appellant and told him to leave. Duong and Pope saw appellant pull out a gun. Duong testified that Ngo walked down to the street and appellant was standing around the sidewalk area. According to Duong, Ngo was about to enter a vehicle parked on the street when appellant asked to purchase beer "And my brother said, 'No get the f*** off the property.' And that's when Mr. Cruz says, 'No, why it's got to be like that, and drew his weapon.'" Ngo then ran to appellant, who was standing on the public sidewalk, grabbed appellant's hands, and they struggled. Duong heard a shot and ran over to them, witnessing Ngo falling down. Duong then grabbed appellant's hand with the gun. Luu and Pope came over and they all fell to the ground. As Duong tried to take the gun away from appellant, appellant fired another shot towards Walnut Street. The gun jammed and Duong took it out of appellant's hand. While Duong was on top of appellant, Luu started hitting appellant. Pope called 9-1-1. The police arrived at the scene and arrested appellant.

Appellant testified on his own behalf. He stated that he had spent the earlier part of the evening in his yard drinking four beers that he had purchased. At around 11 p.m., he walked to a

restaurant, but then decided not to eat there. On his way back home, he walked passed the Ngo home and asked to purchase beer from them. They refused, indicating he could buy beer across the street. Appellant did not want to buy beer across the street and decided to walk to the store where he had purchased the four beers earlier that night. When he arrived at that store, it had just closed for the evening. As he was returning home, he passed the Ngo home and decided to "try his luck again." He asked to buy some beer and pulled out some money to show them. According to appellant, Ngo became extremely aggressive and agitated and jumped up from his seat. Ngo said, "I'll kill you motherf***er; you're on my property." Appellant, who was on the sidewalk, backed several steps further away from Ngo who was approaching and yelling that he would kill appellant. Ngo's friends restrained Ngo as he continued to tell appellant, "I'm gonna kill you." Ngo then broke loose from his friends and came toward appellant. Appellant testified he became very scared and lifted his shirt and put his hand on his gun. Appellant thought Ngo would stop coming toward him when he saw the gun. However, Ngo continued to approach and was moving his closed fists "violently" causing appellant to think he was going to attack him. According to appellant, Ngo grabbed the gun and appellant's hands and they struggled while appellant yelled for Ngo to let go. Two of the others present came up and someone hit appellant in the temple area with a closed fist causing appellant's glasses to fall off. Appellant became "real desperate and in fear of my life, especially with him threatening to kill me . . ., so that was when I decided to fire."

Appellant was indicted for murder and the matter was tried before a jury. At the charge conference, defense counsel requested an instruction on self-defense. The State opposed the request arguing that Ngo's verbal provocation alone was insufficient to justify appellant's actions, as was appellant's testimony that he pointed the gun at Ngo because he thought Ngo was

–3–

going to assault him with his fists. The State also argued appellant was illegally carrying the gun. The trial court denied defense counsels' request stating,

> The Court does not recall the Defendant testifying that he was in jeopardy of somebody's use of unlawful deadly force. The deceased had a right to be where he was. There's no issue about that. And if the deceased – even if the deceased had used deadly force – well, that's another issue – but – furthermore, the law clearly states that the deadly force is not available for use if the Defendant provoked the other's use or attempted used of unlawful force. . . . based on the Defendant's own testimony, he was aware that he was provoking or that his actions would be provocative in this case. That – on top of all the reasons outlined by the Prosecutor, I'm going to deny your request for a self-defense claim.

The charge was submitted to the jury without an instruction on self-defense. The jury found appellant guilty of murder and sentenced appellant to thirty-five years' imprisonment. This appeal followed.

**ANALYSIS**

In a single issue, appellant complains the trial court erred by denying the requested self-defense instruction and that the omission was harmful because having admitted to the shooting, his entire defense was predicated on receiving the instruction. The State did not file a brief on appeal.

When reviewing complaints of jury charge error, we first determine whether error occurred and, if error exists, we next examine whether appellant was harmed by the error in accordance with the analysis set forth in *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g). *See Mendoza v. State*, 349 S.W.3d 273, 277–78, 281 (Tex. App.—Dallas 2011, pet. ref'd). Here, because appellant preserved his complaint in the trial court by requesting a self-defense instruction, the test for harm is whether the error was calculated to injure appellant's rights, i.e., whether appellant suffered "some harm" to his rights. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (quoting *Almanza*, 686 S.W.2d at 171).

**A. Charge Error**

The trial court is required to give a requested instruction on every defensive issue when there is some evidence, from any source, on each element of the defense that would support a rational inference that the element is true. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013).

A person is justified in using deadly force against another if the actor would be justified in using force against the other under section 9.31 of the penal code and to the extent that he reasonably believes that deadly force is immediately necessary to protect himself from the other's use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE ANN. §§ 9.31, 9.32 (West 2011). Under certain circumstances, a person may use deadly force against another even if the other was not actually using or attempting to use unlawful force. *See Hamel v. State,* 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). All that is required is that the actor's actions be justified based on the danger as the actor reasonably perceives it. *Id.* The reasonableness of the actor's belief that deadly force is immediately necessary is viewed from his standpoint at the time that he acted. *See Jones. v. State*, 544 S.W.2d 139, 142 (Tex. Crim. App. 1976).

In this case, appellant testified that on his second attempt to purchase beer from those outside Ngo's home, Ngo was extremely aggressive and angry and jumped up and came towards appellant saying "I'll kill you motherf***er; you're on my property." It is undisputed that appellant was on the sidewalk when Ngo came towards him. According to appellant, somebody grabbed Ngo to hold him back but he kept repeating he was going to kill appellant as he struggled to get away and get to appellant. Appellant testified he took several steps backward on the sidewalk before Ngo got loose from the person holding him back and appellant lifted his shirt and put his hand on his gun and told Ngo to stop threatening him. Appellant pulled out the gun and pointed at Ngo when he was about three feet away, after Ngo came running at appellant "violently" waiving his closed fists like he was going to assault him. Ngo then spun around and

grabbed appellant's gun with his left hand. As the two were struggling, appellant pointed the gun toward Ngo and told him to let go. Two other people then ran toward appellant and he was struck in his temple area with a closed fist causing his glasses to fall off his face. At trial, appellant and his ophthalmologist testified that without his glasses appellant could only focus about six inches from his face. Appellant testified he was in fear of his life at that point and decided to fire the gun at Ngo.

We need not decide whether appellant's claim of self-defense is especially strong or convincing, only that there is some evidence on each element of the defense such that the trial court should have included a self-defense instruction in the jury charge. *See Smith v. State*, 676 S.W.2d 584, 586–87 (Tex. Crim. App. 1984) (defense can be raised even when supporting evidence impeached or contradicted). While appellant may not be entitled to an instruction regarding the presumption of reasonableness of his belief that deadly force was immediately necessary under section 9.32(b)(3) of the penal code because the evidence showed he was illegally carrying a gun in a place he did not own or control,[1] we conclude appellant sufficiently raised self-defense with evidence by admitting to the elements of the offense and testifying to the elements of self-defense in section 9.31(a). Accordingly, the trial court erred by refusing to instruct the jury on self-defense.

**B. Harm Analysis**

Because appellant objected to the erroneous charge, he is entitled to a reversal if the record shows he suffered some actual, rather than theoretical, harm from the error. *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). When performing a harm analysis, we

---

[1] *See* TEX. PENAL CODE ANN. § 46.02 (West Supp. 2014); *Barrios v. State*, 389 S.W.3d 382, 394 (Tex. App.—Texarkana 2012, pet. ref'd) (possession of a firearm and ammunition which had passed through international and interstate commerce, respectively, by an illegal alien in violation of 18 U.S.C. § 922(g)(5) negated entitlement to presumption of reasonableness but did not bar defenses of self-defense or defense of third person).

consider the jury charge as a whole, the arguments of counsel, the entirety of the evidence, and any other relevant information in the record. *See Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013) (citing *Almanza,* 686 S.W.2d at 171).

The jury was not instructed on any justification defenses. It was only instructed to determine whether appellant was guilty of murder as charged in the indictment. The jury was given following two alternatives on which to convict appellant:

> Now, considering the law contained in the court's charge, if you find and believe from the evidence beyond a reasonable doubt that on or about October 1, 2012, in Dallas County, Texas, [appellant], did unlawfully then and there intentionally or knowingly cause the death of DINH NGO, an individual, hereinafter called deceased, by shooting the deceased with a firearm, a deadly weapon, as charged in the indictment,

> -OR-

> If you find and believe from the evidence beyond a reasonable doubt that on or about October 1, 2012, in Dallas, County, Texas, [appellant], did unlawfully then and there intend to cause serious bodily injury to DINH NGO, and did then and there commit an act clearly dangerous to human life, to-wit: by shooting the deceased with a firearm, a deadly weapon and did thereby cause the death of DINH NGO, an individual, then you will find [appellant] guilty of murder as charged in the indictment.

> If you do not so find, or if you have a reasonable doubt thereof, you shall find [appellant] not guilty.

At trial, there was no dispute that appellant intentionally shot Ngo. During cross-examination, appellant admitted that he intentionally and knowingly pulled the trigger with Ngo directly in front of him. Appellant's entire defense was built around the theory of self-defense. During voir dire, the prosecutor discussed self-defense with the venire panel. During opening statements, defense counsel stated that the deceased was intoxicated and aggressive and that appellant was attacked, hit in the nose, and his glasses were knocked off. At the outset of the State's closing argument, however, the prosecutor stated "Specifically, self-defense is not an issue here, okay. We talked about it in voir dire. It's not part of the Charge. And it's not

–7–

something to be considered." As a result, defense counsel was left to argue that appellant did not go to the home with the intent to shoot or harm anyone and that because of his vision problem, appellant might not know where Ngo's body really was in front of him when he intentionally pulled the trigger.

Generally, the erroneous omission of a self-defense instruction is harmful when a defendant has admitted all elements of the offense because it leaves the jury with no option but to find the defendant guilty. *See Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013). Appellant's testimony and other evidence provided some evidence of the elements of self-defense but absent a jury instruction on the issue, appellant was without this defensive theory and the jury was effectively unable to find in his favor.

The evidence demonstrates that appellant was entitled to an instruction on self-defense and the absence of the instruction resulted in some harm, not merely theoretical harm, to appellant. Accordingly, we reverse the trial court's judgment and the case is remanded for further proceedings consistent with this opinion.

/ David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140085F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOSE RAMON CRUZ, Appellant

No. 05-14-00085-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1224443-Q
Opinion delivered by Justice Evans, Chief Justice Wright and Justice Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 7th day of July, 2015.