**Opinion filed December 31, 2018**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00020-CR

_____

## DONALD BLAINE DAVIS, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. 24475**

### M E M O R A N D U M   O P I N I O N

After the jury found Donald Blaine Davis guilty of the offense of murder and after it found an enhancement paragraph to be true, it assessed his punishment at confinement for 99 years; it also assessed a fine of $7,500. We affirm.

Appellant does not dispute that the evidence sufficiently proves that he shot and killed Bobby Glenn Blair, his one-time friend. However, Appellant does challenge the trial court's refusal to charge the jury as requested by Appellant. In four issues on appeal, Appellant complains that (1) the trial court erred when it refused to charge the jury on the issue of the lesser included offense of manslaughter,

(2) the trial court committed error when it refused to charge the jury on the issue of self-defense, (3) the trial court erred when it declined to charge the jury on the issue of apparent danger, and (4) the trial court should have given the jury a charge on the issue of justification.

Sometime before the night that Appellant shot and killed Blair, they were friends and neighbors. During that time, Blair lived with Bobbie Jo Johnson's mother. Johnson was Blair's former girlfriend. When Blair was living with Johnson's mother, Appellant and Blair spent time together, drank together, and smoked methamphetamine together. At some point, Johnson ceased to be Blair's girlfriend, and Blair moved out.

Appellant and Blair's friendship waned after Appellant, among other things, accused Blair of stealing some tires from him. Additionally, Appellant had used social security disability benefits to hire Johnson as his home healthcare provider. As a further catalyst to the breakup of the friendship with Blair, Appellant fired Johnson.

There is considerable evidence in the record that Blair and Appellant each verbally threatened the other in various ways. These threats ran the gamut from threats made by Blair to Appellant, with accompanying hand gestures, that "I'm going to get you," to statements by Appellant to third parties that "I can't whip him, so I'm going to kill him"; "[I will] shoot his f-----g a-s"; and "[I will] blow [Blair's] a-s away."

Johnson and her mother lived across the alley from Appellant's residence. On the day of the killing, Blair texted Johnson to ask her if he could come to her house to get some of his clothing. He texted her again on the night of the killing, but Johnson was talking on her phone to a friend and did not take Blair's call. Soon thereafter, she received a text from Blair in which Blair told Johnson that he was "here." Then, she heard a gunshot; she went to see what had happened. She saw

2

that Blair's pickup was idling in the driveway, that the driver's door was open, and that Blair's body was lying next to the pickup. She asked Appellant, "Did you do this?" Appellant answered, "I told you if he came back over I was going to shoot his f-----g a-s."

Appellant's neighbor, Eric Edward Perkins, also heard the gunshot. Just before he heard it, he heard someone say: "What are you going to do, shoot me, m------f----r?" Later, he saw Blair's body lying in a utility easement area. The easement area was located beside Appellant's residence.

Diane Mary Rodriguez, Appellant's girlfriend, lived with Appellant. On the evening of the killing, she was in the kitchen cooking supper when Appellant came into the house then went back out again. He apparently came in to get the shotgun that he used to shoot Blair. He later identified the shotgun as the one he used to kill Blair. After Appellant had gotten the shotgun and had gone back outside, Rodriguez heard Appellant say: "Bob, you're not supposed to be here." Then, she heard a loud "boom."

On the night of the killing, Charles Wayne Parker, an officer with the Ranger Police Department, went to the scene. While there, he talked with Appellant. Appellant told Officer Parker that Blair had been threatening him, that they had had previous troubles, that Blair had charged at him, that he had tried to get Blair to stop, and that he had shot Blair.

Lancer Shane Morrow, a Texas Ranger, also investigated the circumstances surrounding the shooting. Ranger Morrow talked to Appellant and examined the scene. He testified that the facts he discovered were not consistent with Appellant's claim that Blair charged Appellant. Appellant did not testify.

After Appellant shot Blair, Appellant came back into his residence and told Rodriguez to press his "Lifeline" button. He then removed his belt and handed it and his wallet to Rodriguez and told her: "I may have to go to jail for a little while."

3

At trial, Appellant asked the trial court to include a charge on the lesser included offense of manslaughter; the trial court denied the request. We employ a two-part test when we determine whether the trial court should have charged the jury on a lesser included offense. *Mathis v. State*, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002). We must first determine whether the requested charge concerns an offense that is a lesser included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). Manslaughter is a lesser included offense of the offense of murder. *Mathis*, 67 S.W.3d at 925. Therefore, it remains only for us to determine whether there is some evidence that would permit a jury to rationally find that the accused is guilty only of the lesser included offense. *Id.*

Appellant argues that the trial court should have given the instruction because there was at least a scintilla of evidence that rationally supported an inference that Appellant acted recklessly in the moments before he killed Blair. We do not agree.

The Texas Penal Code provides, in part, that a person commits the offense of murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person commits the offense of manslaughter if he "recklessly causes the death of an individual." *Id.* § 19.04(a). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c).

A determination of whether a person acts recklessly is directed "*at the moment he fired the shots*," not at some other time. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) (emphasis added). Appellant wants us to focus our attention on Appellant's actions in recklessly going to get the shotgun. Even if we were to agree that it was reckless to go get the shotgun as he did, that is no evidence that

4

Appellant was engaged in any reckless behavior *at the time that he pulled the trigger* and shot and killed Blair.

The evidence here does not support a finding of recklessness, and it does not rise to a level that would permit a rational jury to find that, if Appellant is guilty, he is guilty of only the lesser included offense. In the absence of some evidence that Appellant was acting recklessly *when he pulled the trigger*, the trial court was not required to submit the lesser included offense of manslaughter, and it did not err in failing to do so. We overrule Appellant's first issue on appeal.

In his second, third, and fourth issues on appeal, Appellant maintains, respectively, that the trial court erred when it refused to charge the jury on the law of self-defense, on the law of apparent danger, and on the law of justification. We first determine whether it was error for the trial court to refuse those charges. Only if we find error do we then proceed to determine whether harm resulted from the error such as would require us to reverse. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

The trial court must give a requested instruction on every defensive issue raised by the evidence. *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). That is true regardless of the source of the evidence, the strength of the evidence, or the credibility of the evidence. *Id.* A defense is raised by the evidence when there is some evidence on every element of the defense that, if it is believed by the jury, would support a rational inference that that element is true. *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

We will first examine Appellant's requested issue on self-defense. Except in some circumstances not relevant here, a person is justified in using force against another when and to the degree that the actor reasonably believes that the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. PENAL § 9.31.

5

A person is entitled to use deadly force "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a)(2)(A). To be entitled to a self-defense instruction involving deadly force, there must be some evidence that Appellant reasonably believed that deadly force was immediately necessary to protect himself or others from Blair's use or attempted use of deadly force. *See id.* A "reasonable belief" is "a belief that would be held by an ordinary and prudent [person] in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2018). "Deadly force" is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3).

The evidence here shows that Blair had made verbal threats against Appellant. Verbal provocation alone does not justify the use of deadly force against another. *Id.* § 9.31(b)(1). There is no evidence that Blair was using or attempting to use any kind of force, deadly or otherwise, when Appellant shot and killed him. There is nothing in the record to support the contention that Appellant reasonably believed the immediate use of deadly force was necessary to protect himself against Blair.

Because there is nothing in the record to support a finding that Appellant reasonably believed that the immediate use of deadly force was necessary, he was not entitled to a self-defense instruction. The trial court properly denied Appellant's request for an instruction on self-defense. We overrule Appellant's second issue on appeal.

Because Appellant was not entitled to an instruction on self-defense, neither was he entitled to an instruction on apparent danger as set out in the properly refused self-defense instruction. We overrule Appellant's third issue on appeal.

In his fourth issue on appeal, Appellant urges us to find error in the trial court's refusal to charge the jury on the issue of justification as it relates to Rodriguez.

Appellant would have been justified in using force or deadly force against Blair to protect Rodriguez if, under the circumstances as Appellant reasonably believed them to be, he would have been justified under the Penal Code in using force or deadly force to protect himself against the unlawful force or unlawful deadly force that he reasonably believed to be threatening Rodriguez. Further, Appellant must have reasonably believed that his intervention was immediately necessary to protect Rodriguez. *See id.* § 9.33.

There is no evidence that Appellant could have reasonably thought that Rodriguez was in any danger; she was inside the residence cooking dinner when the shooting took place in an easement area beside Appellant's residence. There is no evidence to support the submission of the justification issue to the jury. Therefore, the trial court did not err when it refused to submit the issue. We overrule Appellant's fourth issue on appeal.

We have overruled all of Appellant's issues on appeal, and we affirm the judgment of the trial court.

December 31, 2018                                    JIM R. WRIGHT

Do not publish. *See* TEX. R. APP. P. 47.2(b).        SENIOR CHIEF JUSTICE

Panel consists of: Gray, C.J., 10th Court of Appeals[1];
Simmons, F.J.[2]; and Wright, S.C.J.[3]

(Chief Justice Gray dissents. A separate opinion will not issue. He provides the following note)**

Bailey, C.J., and Willson, J., not participating.

---

[1]Tom Gray, Chief Justice, Court of Appeals, 10th District of Texas at Waco, sitting by assignment to the 11th Court of Appeals.

[2] Rebecca Simmons, Former Justice, Court of Appeals, 4th District of Texas at San Antonio, sitting by assignment.

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.

** There had been a number of times that Davis and Blair had some type of confrontation. Their friendship went south because Davis thought Blair had stolen from him. I think it is a fair characterization that the nature of the relationship spiraled downward until Davis was concerned enough to seek a criminal trespass warning against Blair. It appears that it had been issued but had not been served on Blair because he had not been located by the persons attempting to serve him. This puts Davis's statement, "Bob, you are not supposed to be here" in its proper context. Also, there was evidence that Blair was larger than Davis and that Davis had expressed his fear of being beaten by Blair when he is reported to have stated something to the effect: "I can't whip him, so I'm going to kill him." There was also the evidence that Blair had charged towards Davis after Davis had obtained the shotgun. And, while it does not appear that Blair was yet on Davis's property, he was closer to Davis's property than he was to his own pickup. There really is no explanation for why Blair would have left his pickup and headed towards Davis and it is clear that Blair was aware that Davis was already in possession of the shotgun when he made the statement: "What are you going to do, shoot me," or words to that effect. With that as the factual basis, I next turn to the legal basis for a self-defense instruction. It does not take much evidence to entitle a defendant to the self-defense instruction; "some evidence" is all it takes. It does not even have to be credible evidence. Clearly, the officer that testified that Davis said Blair had charged him, did not believe Davis. The officer gave his opinion to the jury and explained why he thought the physical evidence was to the contrary of Davis's claim. But the officer does not get to make the ultimate call. The jury does. But the jury must be guided about the law and how to use the evidence by a proper instruction. Based upon this evidence in addition to that recited in the opinion, I believe there is some evidence, including reasonable inferences, that would have allowed a reasonable juror to conclude that Davis was in fear of being beaten, if not killed, by Blair if Blair ever got his hands on Davis. Davis had the ability and the means to prevent what he feared could be a life-altering, if not life-ending, beating by a larger aggressor, and Davis defended himself. I am not saying that is what I think happened. What I think happened is not the issue. What a jury could conclude if properly instructed on the law of self-defense, including that in a proper application that there is no duty to retreat, is the issue. There is plenty here for a good lawyer to make an argument for self-defense, but only if there is an instruction on self-defense in the charge. I would hold that the trial court erred in failing to give a self-defense instruction. Davis objected to the trial court's failure. Thus, if we find some harm, the judgment must be reversed and remanded for a new trial. Davis was deprived of his strongest defense: it was him or me that was likely to survive and I chose me. The jury was certainly in a position to reject the defense and had evidence upon which to reject it. But the jury never had the option of considering it as a defense.

8

Having been deprived of his strongest defense, I cannot conclude that Davis did not suffer some harm from the error. Accordingly, I would not reach any of the other issues, and would reverse and remand the proceeding for a new trial. Because the Court affirms the trial court judgment, I respectfully dissent.