**Affirm and Opinion Filed May 31, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00362-CR**

**JIMMY CARLOS SO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F19-24857-V**

## MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Breedlove

Appellant Jimmy Carlos So was convicted of murder after a jury trial and

sentenced to a term of imprisonment of 30 years. Appellant appeals, complaining

that the evidence was legally insufficient to support the verdict. We affirm the trial

court's judgment.

## I. BACKGROUND

On March 25, 2017, Mike Alvarado drove with his mother to pick up his

girlfriend. They parked a few houses away and waited in the car; while waiting,

Alvarado's mother, whose vision was poor, noticed something she thought might be

two dogs fighting. Alvarado looked over and saw what he thought was two men fighting. He pulled his car closer and saw a Hispanic man kneeling over a white man lying on his side and stabbing him. As he got closer, he recognized the white man as "Joshua" or "Josh" Dennis, who he knew from the neighborhood. He did not recognize the Hispanic man. Alvarado flashed his high beams, and the two men fled. Dennis went to his mother's house across the street before collapsing onto her porch. Alvarado drove his mother and girlfriend back to his house and then called the police to report what he had seen.

Paramedics were unable to save Dennis, and he died as a result of a stab wound to the chest that went through his muscle, left lung, and left pulmonary artery. In addition, he suffered seven other sharp force wounds. Dennis also had abrasions and scrapes on his elbows, hands, hips, knees, and legs. His blood toxicology showed that he had methamphetamine in his system at the time of his death.

A forensic investigator photographed the scene and took samples of the blood found on the sidewalks and street, as well as from the porch where emergency responders found Dennis. A closed folding knife was included in Dennis's personal belongings. It was three and a half inches long and no blood was visible on it.

DNA analysis was conducted on Dennis's clothes, the folding knife, and the blood found at the scene. The DNA found on both the knife and Dennis's clothing only belonged to Dennis. One of the swabbed blood drops taken from the scene came back to an unknown individual. A blue bandana collected at the scene

contained a mixture of Dennis's DNA and the same unknown individual as the blood drop. Despite the DNA evidence, the Garland police were unable to find a suspect from the time of death in March 2017 until 2019.

In July of 2017, appellant committed aggravated assault with a deadly weapon and subsequently pled guilty to that offense and was placed on deferred adjudication community supervision for four years. As a result of that case, appellant's DNA was uploaded into CODIS, the DNA database.

In 2019, the unidentified DNA from the scene of Dennis's murder in the CODIS database and appellant's DNA were compared and found to be a match. Police obtained a warrant to collect a sample of appellant's DNA to confirm the results. A buccal swab was collected from appellant, and appellant was interviewed twice that day. The two interviews were videotaped and presented to the jury at trial.

Appellant originally denied knowing anything about the murder other than what he had read on Facebook; however, when he was told his DNA placed him at the scene, he admitted he knew about the case. He claimed that Dennis pulled a knife on him to rob him, and he fought back, cutting his little finger while attempting to grab Dennis's knife. He also claimed that Dennis maintained possession of the knife at all times but later said he took the knife from Dennis. Appellant's story changed several times throughout the interview and he provided several different accounts of the altercation.

Appellant said he and Dennis rolled on the ground while appellant was trying to keep Dennis from stabbing him. Appellant claimed he was stabbed in the leg as they were rolling around. He said that Dennis had appellant pinned down but got up and ran away when they saw a car coming. He later told police that he was able to flip Dennis back around and guide the knife back so that it stabbed Dennis instead of him. Detective Gary Sweet, who conducted two separate forensic interviews on appellant, testified that appellant's version of events did not match the evidence and identified several inconsistencies.

Appellant's mother and brother were interviewed, and they told Sweet that appellant had not told them that someone had tried to rob him; instead, he told them he was assaulted by a gang member. Appellant's aunt, mother, stepfather, and brother all testified that they saw appellant the following day, and that it looked like he had been beaten up. He had injuries on his face, neck, and hands.

At trial, appellant testified on his own behalf. He testified that as he was returning from the convenience store, he saw a man approaching him. The man was talking to himself and cursing and that he was acting strange, like he was angry about something. He claimed that Dennis bumped into him and asked to use the phone, and that when appellant refused, Dennis pulled out the knife and demanded appellant's phone and money.

Appellant testified that Dennis swung the knife and him and that he grabbed the knife with his hand, cutting himself. Appellant then panicked and ran away.

Dennis chased after appellant, tackled him to the ground, and stabbed him in the leg. Appellant testified that Dennis dropped the knife, got on top of appellant, and started choking him. Appellant claimed that he was losing consciousness, but when he saw Dennis pick up the knife again, he kneed Dennis in the testicles. The two struggled on the ground, and appellant testified that he was in fear for his life.

Appellant testified that when they saw a car coming, Dennis got up and ran away, and appellant did too. He testified that he did not know that Dennis was fatally injured. Appellant went back to his house, cleaned up, and went to bed. He claimed that he did not know that Dennis had died until the police told appellant when they interviewed him in 2019. Appellant did not report being assaulted to the police and refused to get medical treatment when urged to do so by his family.

Appellant was tried before a jury on November 17, 2021. The charges of murder and manslaughter were presented to the jury along with a self-defense instruction. The jury found appellant guilty of murder as charged in the indictment. Appellant moved for a new trial on November 19, 2021, which was denied. This appeal followed. In one issue, appellant complains that the evidence was legally insufficient to support the verdict.

## II. STANDARD OF REVIEW

In determining whether the evidence is sufficient to support a criminal conviction, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979). We view the evidence in the light most favorable to the verdict

and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 313; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury, as the fact-finder, may make reasonable inferences from the evidence presented at trial in determining appellant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). When there is conflicting evidence, we presume the fact-finder resolved those conflicts in favor of the verdict and defer to that resolution so long as it is supported by the evidence. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We also defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Our role as an intermediate appellate court is restricted to guarding against the "rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

### III.   DISCUSSION

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1). Alternatively, he also commits the offense when he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *Id*. at § 19.02(b)(2).

–6–

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* at § 6.03(b). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* at § 6.03(c).

Intent, being a question of fact, is in the sole purview of the jury. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). A jury may rely on collective common sense and common knowledge when determining intent. *Cravens v. State*, No. 05-21-00947-CR, 2022 WL 17248836, at *2 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op., not designated for publication) (citing *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.)). Intent also may be inferred from the circumstantial evidence surrounding the incident, which includes the acts, words, and conduct of the accused. *See* TEX. CODE CRIM. PROC. ANN. art. 38.36(a); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). "Attempts

to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). "An actor is justified in using deadly force if, among other things, the actor reasonably believes deadly force is immediately necessary to protect the actor against another's use or attempted use of unlawful deadly force." *Cravens*, 2022 WL 17248836, at * 2 (citing *Green v. State*, 589 S.W.3d 250, 255 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); TEX. PENAL CODE ANN. § 9.32(a)(1)–(2)(A)).

In a claim of self-defense, defendant bears the burden to produce evidence supporting the defense. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *Moralez v. State*, 450 S.W.3d 553, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013).

After a defendant satisfies his burden by producing some evidence that supports self-defense, the State then bears the burden of persuasion to disprove self-defense. *Braughton* at 608. The State's burden of persuasion "is not one that requires

–8–

the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Therefore, in resolving the evidentiary sufficiency issue, we look not to whether the State presented evidence that refuted evidence of self-defense, but rather we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914; *Braughton*, 569 S.W.3d at 609.

In his brief, appellant argues that the evidence is legally insufficient to support the verdict because he presented evidence of self-defense which the State did not rebut.[1] Appellant's defense is premised on his testimony regarding his account of the altercation as well as the testimony of his mother and brother regarding appellant's injuries. However, the jury was the sole judge of credibility on this issue. *See e.g., Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (when record supports conflicting inferences we presume the jury resolved the conflicts in favor of the verdict); *Rodriguez v. State*, 546 S.W.3d 843, 860 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (jury not required to accept defense claims). The jury heard

---

[1] Appellant does not challenge the sufficiency of any specific element of the crime and limits his challenge to the jury's rejection of his self-defense theory. Therefore, we address only those arguments made by appellant.

multiple conflicting versions of the altercation between the two recorded police interviews and appellant's testimony on the stand, which is evidence that supports the jury's finding of guilt. *See Guevara*, 152 S.W.3d at 50. The jury heard testimony from Alvarado saying that he saw a Hispanic man standing over Dennis and stabbing him repeatedly. They also heard testimony from both appellant and his family members that appellant avoided the police and refused to seek medical attention which also supports the jury's finding of guilt. *See id.*

Additionally, the jury heard testimony regarding the knife found in Dennis's personal effects. The knife in Dennis's possession had only a three-and-a-half inch blade. Appellant argued that the knife had been found in the yard by his family, cleaned, and closed before giving it to the police, but the State offered conflicting evidence that the knife was actually found in Dennis's possession at the hospital. Additionally, the forensic evidence regarding the size and depth of the sharp force wounds show that the fatal wound was five-and-a-half inches deep and another blow was struck hard enough to penetrate through Dennis's skull and into his brain. As Sweet testified, this evidence contradicts the versions of events told by appellant where Dennis was accidentally stabbed while rolling around on the ground or where Dennis stabbed himself while appellant was holding Dennis's hand, and is further contradicted by the wound on appellant's pinky finger. This evidence also supports a finding that appellant had a knife that had a blade that was at least five-and-a-half

inches or more in length which he took with him when he fled the scene. *See id.* (evidence of attempts to conceal or destroy evidence supports a verdict of guilt).

Appellant pled guilty to assault just two months after the altercation with Dennis, and even though he had already pled guilty to that offense, appellant testified that he was also acting in self-defense in that altercation as well. The details of appellant's defense to the subsequent assault were strikingly similar to his defense in the present case, and the jury was entitled to find that appellant's story was self-serving. *See Hernandez v. State*¸ 2008 WL 588902, at *4–5 (Tex. App.—Dallas Mar. 5, 2008, pet. ref'd) (mem. op., not designated for publication). The jail letter from appellant where appellant discussed the case involving Dennis's death further contradicts appellant's self-defense theory, where appellant wrote "It's good no evidence on me just my blood at the scene. That's where I fucked up."

The jury, rather than appellant, is the judge of credibility of the witnesses and their testimony, and they were entitled to believe the testimony of Alvarado and Sweet over the conflicting and contradictory testimony of appellant and his family. *See Clayton*, 235 S.W.3d at 778. Based on our review of the record, we conclude a rational trier of fact could have rejected the self-defense theory and reasonably found the elements of murder beyond a reasonable doubt. *See Braughton*, 569 S.W.3d at 609.

## IV. CONCLUSION

We affirm the trial court's judgment.

220362f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Maricela Breedlove//
MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JIMMY CARLOS SO, Appellant

No. 05-22-00362-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F19-24857-V. Opinion delivered by Justice Breedlove. Justices Nowell and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of May, 2023.