# Court of Appeals
## Tenth Appellate District of Texas

10-23-00178-CR
10-23-00179-CR

Justin Shavora Smith,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
County Court at Law of Navarro County, Texas
Judge Amanda Doan Putman, presiding
Trial Court Cause Nos. C40,960-CR; C40,962-CR

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury found Appellant, Justin Shavora Smith, guilty of murder and aggravated assault with a deadly weapon. The jury assessed his punishment at thirty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice on the murder and twenty years confinement on the aggravated assault with a deadly weapon. The trial court sentenced

Smith accordingly and ordered the two sentences to run concurrently. This appeal ensued. We will affirm.

## Background Facts

On March 27, 2021, law enforcement responded to a shooting incident at M.R. Smith Funeral Parlor in Corsicana, Navarro County, Texas, involving Smith and his two sisters, Shaneen Romero and Carneisha Stewart. Sergeant Mark Nanny with the Corsicana Police Department was one of the first officers on scene after the shooting. Nanny testified at trial that when he arrived on scene, Stewart was in the road screaming that her brother, Smith, had shot her sister, Romero, and that he was going to kill Stewart too. Nanny observed Smith chasing Stewart into the street before Smith turned and walked back towards the funeral home. Nanny testified that Stewart did not have a purse or gun with her during the incident or when she was fleeing from Smith. Nanny also observed Romero laying under the carport motionless when he arrived on scene.

Smith fled the scene before additional law enforcement arrived, but he was later arrested and interviewed by law enforcement. Multiple officers testified that Smith said some variation of "I can't believe I did that," "I can't believe I shot my sister," or "I'm guilty" multiple times, both unsolicited and in response to questioning during his interview with officers. During the

interview with law enforcement, Smith stated he and Romero had been arguing, and he went to his vehicle while she followed him, continuing with "a bunch of nagging." Smith stated that when he got to the vehicle, he grabbed his gun, turned around, and fired to try to scare her. He said he was trying to aim to the side, but Romero ducked into the line of fire and was hit by his shot. Smith also stated that after he shot Romero, Stewart was talking to him as she was coming outside to the carport area, and when he came around the corner with the gun in his hand, he asked, "What are you talking about?" and Stewart took off running. As Stewart was running away, Smith stated he fired a shot into the air. During his interview, Smith made no mention of being attacked by either sister. When asked about scratches on his body when he was arrested, he stated the marks were from running through the woods after he fled the scene.

Paul Salazar, a witness who called 911, testified that he observed Stewart running across the road while fleeing from Smith and that he heard the two gunshots. He stated Stewart was not carrying a purse as she was running from Smith.

Vincent Brown, a friend of Smith who occasionally worked at the funeral parlor, was on scene during the incident and testified to what he observed. He testified that a meeting was taking place at the funeral home

which included himself, Smith, Romero, Stewart, and M.R. Smith, the father of Smith, Romero, and Stewart. Brown testified that the meeting got heated, and at one point Smith went outside the building, and Romero followed him outside. Brown stated that he did not see what occurred outside, but heard Romero say "You sorry motherfucker. You son of a bitch. You ain't shit." He then heard a gunshot, went towards the gunshot, and encountered Smith, and asked Smith to calm down. Brown then left the building, saw Romero laying on the ground, and went to his vehicle to leave the scene. Before he left the scene, he observed Stewart running from Smith while Smith used profanities and shot at her. When Brown was asked to confirm whether he told detectives that Smith said "Bitch, you've been talking all that shit, now talk that shit" to Stewart, Brown stated that was probably accurate. Brown also stated he did not see either Romero or Stewart with any firearms that day.

The medical examiner, Dr. Gruszetki, testified Romero died of gunshot wounds and that the distance between the muzzle of the gun and the entrance wound was at least 18 inches. Gruszetki also testified that she did not observe any other injuries on Romero's body, nor did she observe any other physical signs consistent with a struggle.

Stewart testified about what she observed during the incident. She stated that she, Romero, Smith, Brown, and M.R. Smith were having a meeting after finishing the funerals they were working that day. She said the conversation started out calm but would escalate when Smith did not like what Romero said to Brown. At one point, Brown exited the building like he was going to leave, and Smith and Romero followed. Eventually they all came back inside, but Smith went back outside, and Romero followed him after a few seconds. Stewart stated that Romero and Smith were screaming, but she could not make out what they were saying. After about thirty to forty-five seconds of screaming, Stewart heard a gunshot. Brown was the first to go towards the carport area, followed by M.R. Smith, while Stewart stayed inside. Then, Stewart heard Smith say, "It's done, it's done, where's the other bitch?", so she ran out the front door and across the street. She stated she heard a gunshot behind her, and after she got to the other side of the street, she turned and saw Smith holding the gun and making a motion with his hand. At this point, officers arrived on the scene and Smith left the scene. Stewart testified that she did not own a gun before or during the incident, nor did she keep a gun in her purse. She also denied any previous physical altercations, including spitting at Smith, by either her or Romero. She did

admit to previous incidents of cussing at Smith and verbal altercations with him, involving both herself and Romero.

Smith also testified during both phases of trial. Smith stated he had a history of conflict with Stewart and Romero regarding their father's funeral home business. He testified that the prior arguments had been primarily verbal, but that Stewart got physical with him on three previous occasions: (1) when she "chest bumped him," (2) when she showed him a gun in her purse and told him to "do something" approximately two weeks prior to the shooting, and (3) when she spit in his face. On the day of the shooting, Smith stated he was arguing with Romero and Stewart at the funeral home. Stewart went back inside, and he and Romero stayed outside. Smith said Romero got very emotional during the argument, so he went to his father's van to retrieve his gun and cigarettes, then was going to go to his own vehicle to leave. He stated Romero ran at him, yelling obscenities, and jumped on him while grabbing at his hand holding the gun. Smith said he fired the gun to scare her because she was trying to get the gun from him. He also stated he was scared, although he did not specify why he was scared at this point. He stated he did not intend to hit Romero. At this point, Smith said he dropped the gun but picked it back up when he heard Stewart yelling in an aggressive tone and saw her with a purse in her hand. He testified that he

was afraid of how Stewart would react when she realized what happened. When he picked up the gun, Stewart took off running, and he pursued her to get her off the property. He did not remember whether she had her purse with her when she was running away from him but knew that she did not have the purse with her by the time she was across the street. He also admitted to saying "You've been talking that shit, talk that shit now" while chasing Stewart away from the property. Once Stewart was across the street, Smith fired the gun in the air, then walked back to the funeral home, dropped the gun, and fled the scene as officers arrived. Smith testified he was in fear of a deadly threat from Stewart because of her purse, where she kept her gun, and the verbal altercation they had that day, but he did not see Stewart with a gun at any point in time that day.

In two separate indictments, Smith was charged with murder for causing the death of Romero and aggravated assault with a deadly weapon against Stewart. Smith was tried for both offenses in a single jury trial. He requested self-defense instructions on both charges, but the trial court denied the self-defense instruction on the aggravated assault charge. The jury rejected the self-defense claim on the murder charge and found Smith guilty of murder and aggravated assault with a deadly weapon. Following the punishment hearing, Smith requested a sudden passion instruction, which

the trial court included in the punishment jury charge for the murder. The

jury rejected the defense of sudden passion.

## Issue One

In his first issue, Smith argues that there is insufficient evidence to

support the jury's rejection of Smith's claim of self-defense against the

murder charge.

STANDARD OF REVIEW

The Court of Criminal Appeals has defined our standard of review of a

sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); see also *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the

factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; see also *Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

AUTHORITY

A person commits the offense of murder if the person intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(2). It is a defense to prosecution if the conduct in question is justified under Chapter

9 of the Penal Code. TEX. PENAL CODE ANN. § 9.02. A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31. Under Texas Penal Code 9.32, a person is justified in using deadly force against another if the actor would be justified in using force against the other under Section 9.31, and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32.

In a claim of self-defense, a defendant bears the initial burden of production, while the State bears the burden of persuasion against the raised defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). The defendant's burden of production requires him to adduce some evidence that would support a rational jury finding in his favor on the defensive issue. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). The State's burden of persuasion does not require the production of evidence to rebut the claim of self-defense; it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594.

The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We determine whether after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and could have found against appellant on the self-defense issue beyond a reasonable doubt. *See Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018).

ANALYSIS

Smith concedes that there is sufficient evidence in the record for the jury to have found the essential elements of murder beyond a reasonable doubt, but he argues that the jury should have found that Smith was justified in his use of deadly force against Romero because he was acting in self-defense.

The jury had sufficient evidence to reject appellant's claim of self-defense. Smith's trial testimony was the only evidence supporting his claim of self-defense. A jury's decision to reject witness testimony must be rational in light of the totality of the record, and any underlying inferences used to reject that testimony must be reasonable based upon the cumulative force of all of the evidence. *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim.

App. 2011). Smith's description during his interview with police of how Romero was shot differed from his trial testimony such that a rational jury could reasonably reject his claims of self-defense. Additionally, other witnesses' testimonies contained details of the events from which a rational jury could reasonably infer that Smith was not acting in self-defense. Specifically, the medical examiner's testimony contradicts Smith's claim that Romero was grabbing at him or close enough to be trying to get the gun from him when she was shot. Stewart testified that after the gunshot, she heard Smith say, "It's done, it's done, where's the other bitch?" Viewing all the evidence in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt and could have found against Smith on the self-defense issue beyond a reasonable doubt.

We overrule Smith's first issue.

## Issue Two

In his second issue, Smith argues that the trial court erred in refusing to instruct the jury on self-defense in the charge of aggravated assault with a deadly weapon.

STANDARD OF REVIEW

We review alleged jury charge error by considering two questions: (1) whether error existed in the charge and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). A defendant is entitled to an instruction on any defensive issue that is raised by the evidence, regardless of the strength or credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). A defensive issue is raised by the evidence if there is sufficient evidence to support a rational jury finding as to each element of the defense. *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the defendant's requested defensive instruction. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). A trial court errs to refuse a self-defense instruction if there is some evidence, viewed in the light most favorable to the defendant, that will support its elements. *Gamino*, 537 S.W.3d at 510.

AUTHORITY

A person commits the offense of aggravated assault with a deadly weapon if the person intentionally, knowingly or recklessly threatens bodily injury to another person, and the person uses or exhibits a deadly weapon during the alleged assault. TEX. PENAL CODE ANN. § 22.01; 22.02. The use of

deadly force is a defense to prosecution for aggravated assault if the use of deadly force is justified. *See* TEX. PENAL CODE ANN. § 9.02. A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31. The use of force against another is not justified: (1) in response to verbal provocation alone. *Id.* Under Texas Penal Code 9.32, a person is justified in using deadly force against another if the actor would be justified in using force against the other under Section 9.31, and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32.

ANALYSIS

For a self-defense instruction to be given, Smith must have reasonably believed that the force or deadly force was immediately necessary. The "reasonably believes" language contains subjective and objective components. *See Lozano v. State*, 636 S.W.3d 25, 33 (Tex. Crim. App. 2021); *Werner v. State*, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986). Smith must have subjectively believed that Stewart used or attempted to use unlawful force or deadly force against him and that his use of unlawful or deadly force in

response was immediately necessary. *See Lozano v. State*, 636 S.W.3d at 33; *Semaire v. State*, 612 S.W.2d 528, 530 (Tex. Crim. App. 1980). Here, viewing the evidence in a light most favorable to Smith having a subjective belief that force or deadly force was immediately necessary to protect himself against Romero's use or attempted use of unlawful force or deadly force, the relevant evidence shows that:

- Smith was afraid of how Stewart would react, including that she might shoot him, when she realized he had killed Romero,

- Smith picked up the gun when he heard Stewart yelling in an aggressive tone,

- Smith thought Stewart had a purse with her when he first saw her after he killed Romero,

- Stewart had shown him a gun that she had in her purse approximately two weeks prior to the incident.

A case can be made that this evidence establishes that Smith held a subjective belief that his use of force was immediately necessary to protect himself from Stewart.

Additionally, a defendant's subjective belief must be reasonable. A defendant's subjective belief can be presumed reasonable if the defendant:

(1) knew or had reason to believe that the person against whom the deadly force was used:

(A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

(B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or

(C) was committing or attempting to commit an offense described by Subsection (a)(2)(B)[1];

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

TEX. PENAL CODE ANN. § 9.32. There is no evidence that Smith believed Stewart was acting in a way that qualifies for any of the conduct described in §9.32(b)(1). Additionally, Smith does not contest that he had just killed

---

[1] Aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. TEX. PENAL CODE ANN. § 9.32(a)(2)(B).

Romero, which could be considered both provocation and criminal activity under (2) and (3). Therefore, a case can be made that the presumption of reasonableness does not apply in this case. *See Lozano v. State*, 636 S.W.3d at 33.

A reasonable belief is one held by an "ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE § 1.07(a)(42). The "ordinary and prudent person" standard is meant to operate as a limitation on defendants who harbor unreasonable beliefs that the use of deadly force was immediately necessary. *See Lozano v. State*, 636 S.W.3d at 33. By his own testimony, Smith never saw Stewart with a gun on the day of the incident. He only mentions seeing her with a purse when she first came outside after he shot Romero, but he confirmed that he did not remember seeing her with the purse at any other time, including while he was chasing her and when he fired his gun to scare her. Smith stated that when Stewart saw him with the gun, she immediately turned and fled. Given this evidence, we cannot say that Smith's belief that the force or deadly force was immediately necessary was reasonable. Therefore, the trial court did not err in denying Smith's request for a self-defense instruction on the aggravated assault charge.

We overrule Smith's second issue.

## Issue Three

In his third issue, Smith primarily argues that the evidence is legally insufficient to support the jury's negative finding on sudden passion. He alternatively argues that the evidence is factually insufficient to support the jury's negative finding on sudden passion.

AUTHORITY

After being found guilty of murder, a defendant may raise the issue during the punishment phase as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. TEX. PENAL CODE ANN. § 19.02(d). "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation. *Id* at §19.02(a)(2). "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id* at §19.02(a)(1). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree. *Id* at §19.02(d).

For matters in which the defendant bears the burden of proof by a preponderance of the evidence, including a claim of sudden passion, we

employ the civil standards of review for legal and factual sufficiency of the evidence. *See Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013).

First, we review the evidence for legal sufficiency by examining the record for any evidence that supports the jury's findings while ignoring all evidence to the contrary unless a jury could not. *See Matlock*, 392 S.W.3d at 669. If no evidence supports the finding, we review the entire record to determine whether the evidence establishes the opposite as a matter of law. *Matlock*, 392 S.W.3d at 668.

We then review the evidence for factual sufficiency to support the finding by examining all the evidence in a neutral light to determine whether the verdict is "so against the great weight and preponderance of that evidence to be manifestly unjust." *Matlock*, 392 S.W.3d at 672–73; *Meraz v. State*, 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990) (en banc).

ANALYSIS

Beginning with the legal sufficiency, we examine the record for any evidence that supports the jury's finding that Smith did not act under a sudden passion, ignoring all evidence which would support a finding of sudden passion. Smith argues that there is no evidence which would support the jury's rejection of sudden passion. Smith points to his testimony during both phases of trial that Romero was aggressive and trying to grab his gun

from him, and that he did not have time to reflect on his actions before firing the gun. He asserts that his testimony conclusively established that he acted under a sudden passion. However, Smith's testimony was contradicted by several witnesses and pieces of evidence, including his own statements to police after the incident. During his interview with police, Smith stated he and Romero had been arguing, and he went to his vehicle while she followed him, continuing with "a bunch of nagging." Smith stated that when he got to the van, he grabbed his gun, turned around, and fired to try to scare her. He said he was trying to aim to the side, but Romero ducked into the line of fire and was hit by his shot. The medical examiner's testimony also contradicted Smith's trial testimony that he and Romero were struggling over the gun and that it was during this struggle that the gun went off. Additionally, both Stewart and Brown testified to statements made by Smith directly after he shot Romero from which a jury could infer he intended to shoot Romero. Since some evidence exists that Smith had time to reflect before firing the gun, the evidence is legally sufficient to support the jury's negative finding on the issue of sudden passion.

To determine factual sufficiency to support the finding that Smith did not act under a sudden passion, we examine all the evidence in a neutral light to determine whether the verdict is so against the great weight and

preponderance of that evidence to be manifestly unjust. However, we do not intrude on the jury's role as sole judge of the weight and credibility of the evidence. *See Rankin*, 617 S.W.3d 169, 185 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). As explained in the legal sufficiency analysis, there was conflicting evidence on Smith's state of mind when he fired the shot which killed Romero. The only evidence which supports a finding of sudden passion is Smith's own testimony at trial. Here, the jury was free to reject Smith's testimony as a matter of witness credibility, lack of supporting evidence, or because he changed his story between his police interview and trial. Viewing all the evidence in a neutral light, we cannot say that the jury's finding rejecting sudden passion is so weak as to be manifestly unjust or against the great weight and preponderance of the evidence. Therefore, the evidence is factually sufficient to support a finding that Smith did not act under a sudden passion.

We overrule Smith's third issue.

## Conclusion

Having overruled Smith's three issues, we affirm the trial court's judgment.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  July 10, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
Do Not Publish
CRPM

