

**In the**
**Court of Appeals**
**Second Appellate District of Texas**
**at Fort Worth**

———————————————

No. 02-25-00150-CR

———————————————

AUNDRA DAWAYNE ELBERT TAYLOR, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1775985

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

In one point, Appellant Aundra Dawayne Elbert Taylor challenges his conviction for murder. *See* Tex. Penal Code § 19.02(b). A jury acquitted Appellant of capital murder but convicted him of the lesser-included offense of murder for shooting and killing two people. The jury's punishment verdict assessed a sentence of life imprisonment for Appellant, and the trial court sentenced Appellant in accordance with that verdict.[1]

On appeal, Appellant contends that the "State failed to prove beyond a reasonable doubt that self[-]defense did not apply to" his conduct. The jury's verdict indicates that it accepted Appellant's self-defense claim for the murder of one of the people he shot but not for the other. As explained below, the jury was well within its province to reject Appellant's self-defense claim for the murder of one of the individuals whom he killed. We affirm the trial court's judgment.

### II. Factual and procedural background

The factual setting that we examine involves a late-night convenience-store encounter that turned deadly. Appellant made a 2:00 a.m. stop to buy cigars. While in the checkout line, Appellant encountered Marques Parker. Parker asked Appellant if he "was '5K,'" which was a reference to whether he was a killer of members of a

---

[1]The jury rejected Appellant's contention that he had committed the murder while acting under a sudden passion.

gang called Channel 5. Appellant had described himself as being such a killer in a music video.

Appellant claimed that Parker's hand was in a backpack he carried and that his hand was positioned in such a way that he appeared to Appellant to be grasping the handle of a gun. A gun was later found in the backpack. Appellant also displayed a firearm that he was carrying almost as soon as he saw Parker.

The conversation continued with Parker's again asking Appellant if he was 5K and making a statement that suggested to Appellant that Parker had a thought of shooting him. During this conversation, Michael Sansom also walked into the store, tapped Parker on the shoulder, and then stood next to him. When another individual (whom Appellant claimed he was fearful of) entered the store, Appellant drew his gun and shot both Parker and Sansom in their faces. The third party's presence caused Appellant to begin shooting on sight, i.e., as soon as he saw that party. Appellant claimed that he had shot Sansom because he was standing next to Parker and that Sansom's position had caused Appellant to fear Sansom in addition to Parker. The wounds to Parker and Sansom were fatal.

The third party whose presence allegedly prompted Appellant to begin shooting did not display a firearm when Appellant began firing and ran for the store's door. As the third party did so, Appellant—without pausing—fired multiple shots at the third party's back. This individual escaped the fusillade with only a gunshot wound to the hand.

3

With respect to the justification that Appellant offered for shooting Sansom

and the facts that undermine that justification, the jury heard the following:

- Sansom walked up to Parker and tapped him on the shoulder as if to ask, "What's up?" Appellant formed a belief that Sansom was with Parker based on the following:

  > So first he come in and it was just a tap and he walk away, so nothing just major or nothing. But then shortly, maybe a step, two steps, max three, he come back in, and he stands with him. Just from the sheer look of it, it seems like he was with him.

- Appellant testified that he had shot Sansom because he was unsure whether he was with the others:

  > Q. And [Sansom] tapped [Parker] on the shoulder, and you said he was basically saying, ["W]hat's up?["]
  >
  > A. Right. Like --
  >
  > Q. And that's why you executed him in his head?
  >
  > A. That's not -- I didn't know that -- if he wasn't, I didn't know that he was or wasn't with the party. It looked as if they was together.
  >
  > Q. He deserved to die because he was with [Parker] is what you're saying?
  >
  > A. But I didn't -- I didn't -- in the moment, it's hard to, like -- if he is a threat as well.
  >
  > . . . .
  >
  > Q. I'm asking you why you would assume that [Sansom], who you've never met in your life, who you've never heard of, who you know nothing about, why would you assume that he was going to shoot you?

4

> A. Because he hanging out with the people that he's hanging out with.

- Sansom did not say a single word to Appellant during the brief encounter before Appellant shot him.

- Sansom did not have a gun.

- At the moment that Appellant shot Sansom, Appellant admitted that he was not threatened by Sansom.

- The instant before Appellant began firing, Sansom was standing with his hands clearly visible, and they were being held in a nonthreatening manner.

- Appellant shot Sansom an instant after he shot Parker and while Sansom was moving backwards away from Appellant and without any indication that he was reaching for a weapon.

- Appellant not only shot Sansom—who did not appear to be a threat—but also immediately began firing at the back of another party who was attempting to flee.

- Sansom was not involved in the videos that Appellant claimed (1) had "dissed" him and (2) provided a partial explanation of the background for the feelings between the parties.

The charge asked if Appellant was guilty of capital murder, which required a finding that Appellant had intentionally and knowingly caused the death of both Parker and Sansom in the same criminal transaction. In turn, the charge also submitted the lesser-included offense of murder, which required the following finding:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 10th day of April 2023, in Tarrant County, Texas, [Appellant], did intentionally or knowingly cause the death of an

5

individual, Michael Sansom, by shooting him with a firearm, then you will find [Appellant] guilty of the lesser[-]included offense of murder.[2]

The trial court submitted an instruction on the justification of self-defense. Indeed, the trial court also instructed the jury that

> [i]f the defendant has a reasonable apprehension of actual danger from a group of assailants, the defendant has a right to act upon the hostile demonstration of either one or all of them and to use deadly force against any one of them if it reasonably appears to the defendant that they are present for the purpose and acting together to take his life or to do him serious bodily injury.

The jury acquitted Appellant of capital murder but convicted him of murder. This appeal followed.

---

[2] The court's charge defined the lesser-included offense of murder in accordance with Penal Code Section 19.02(b)(1), which provides that "[a] person commits an offense if the person . . . intentionally or knowingly causes the death of an individual." Tex. Penal Code § 19.02(b)(1).

6

## III.  Analysis

### A.  We set forth the sufficiency standard of review that we apply.[3]

In an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).  This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

---

[3]Appellant's brief in this matter is unhelpful to say the least.  Its statement of facts, for the most part, lacks record references.  *See* Tex. R. App. P. 38.1(g) ("The statement [of facts] must be supported by record references.").  Then, it has fifteen pages quoting testimony without any analysis of that testimony, and the quotation is misleading because its limited nature ignores other relevant parts of the record.  *See* Standards for Appellate Conduct, *Lawyers' Duties to the Court* ¶ 3, Texas Rules of Court (State) 336 (West 2026), https://www.txcourts.gov/media/1437423/standards-for-appellate-conduct.pdf ("Counsel should not misrepresent, mischaracterize, misquote, or miscite the factual record . . . .").  Next, the brief cites authority—the most recent of which is more than thirty years old and stands for propositions long rejected.  *See id.* ¶ 4 ("Counsel . . . should not cite authority that has been reversed, overruled, or restricted without informing the court of those limitations.").

As noted by the State, Appellant seeks to have us review sufficiency under a long-rejected factual-sufficiency theory and to impose the burden on the State to rebut every reasonable hypothesis contrary to his guilt.  Both propositions are dead letters.  *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (rejecting factual-sufficiency standard and overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), which was cited by Appellant); *see also Zuniga v. State*, 551 S.W.3d 729, 739 (Tex. Crim. App. 2018); *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) ("Although the State must prove that a defendant is guilty beyond a reasonable doubt, the State's burden does not require it to disprove every conceivable alternative to a defendant's guilt.").

inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Carter v. State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021).

## B. We explain the principles that govern the assertion and review of a self-defense claim.

The following principles establish what constitutes self-defense and our evidentiary review of a self-defense claim:

- "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary

8

to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code § 9.31(a). The use of force is not justified in response to verbal provocation alone. *Id.* § 9.31(b)(1).

- Deadly force against a person is "justified" as an act of self-defense:

> (1) if the actor would be justified in using force against the other under Section 9.31; and
>
> (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:
>
>> (A) to protect the actor against the other's use or attempted use of unlawful deadly force[.]

*Id.* § 9.32(a)(1), (a)(2)(A).

- A reasonable belief is a "belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42).

- Self-defense presents a fact question for the jury, and a guilty verdict indicates that the jury rejected the defense. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991).

- The shifting burdens that apply and the context in which we review a self-defense claim are as follows:

> This Court's precedent holds that, in a claim of self-defense or defense of third persons that would justify a defendant's use of force against another, the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton . . .*, 804 S.W.2d [at] 913–14 . . . . The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). By contrast, the State's burden of persuasion "is not one that requires the production of evidence; rather it requires only that the State

9

prove its case beyond a reasonable doubt." *Zuliani*, 97 S.W.3d at 594 (citing *Saxton*, 804 S.W.2d at 913).

*Braughton*, 569 S.W.3d at 608–09.

- A slightly different formulation of the standard is that we are to make a two-pronged inquiry to determine whether the jury's resolution of a self-defense claim is supported by the evidence:

  > [W]e look not to whether the State presented evidence [that] refuted appellant's self-defense testimony[] but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

  *Saxton*, 804 S.W.2d at 914.

- The fact that the defendant testified to a belief that the conduct was justified does not mean that the jury must accept that premise if there is a rational basis to reject the defendant's belief:

  > "A jury's decision to reject witness testimony must be rational in light of the totality of the record, and any underlying inferences used to reject that testimony must be reasonable based upon the cumulative force of all of the evidence." *Braughton*, 569 S.W.3d at 611 (citing *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011)). Moreover, a jury may not disregard undisputed objective facts that only ha[ve] one logical inference. *Id.* "A jury is permitted to reject even uncontradicted defensive testimony, so long as its rejection of that evidence was rational in light of the remaining evidence in the record and is not contradicted by indisputable objective facts." *See id.* at 612 (citing *Saxton*, 804 S.W.2d at 913–14) (other citations omitted).

10

*Clarabut v. State*, No. 09-23-00321-CR, 2025 WL 2792956, at \*14 (Tex. App.—Beaumont Oct. 1, 2025, no pet.) (mem. op., not designated for publication).

**C.    The jury acted well within its ambit as factfinder to reject Appellant's claim that he had acted in self-defense by shooting Sansom.**

It was not the State's burden to challenge Appellant's claim of self-defense by producing evidence to refute it. Instead, it was the State's burden to establish the elements of murder and to persuade the jury that the State had proven beyond a reasonable doubt that self-defense did not justify Appellant's conduct. Appellant does not contend that the State fell short in proving that he committed the offense of murder when he shot Sansom. Whether the claim of self-defense was properly rejected turns not on whether the State offered evidence to rebut Appellant's self-defense claim but whether a rational trier of fact would "have found against [A]ppellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914.

In essence, the evidence supports the inference that Appellant decided to shoot Sansom in the face because he thought that Sansom's mere presence next to Parker might present a threat. Appellant decided that this threat existed simply based on Sansom's sin of greeting and standing next to the person that Appellant contended was threatening him with a gun, a gun that was not pointed at Appellant. So Appellant took the preemptive step of murdering Sansom after he shot the person that he claimed was threatening him even though he did not know Sansom. And

11

beyond that fact, Sansom said nothing to him, did not display a gun, and made no threats, and a video of the shooting shows that Sansom's hands did not hold or reach for a weapon. Appellant took the additional preemptive step of shooting another party who was fleeing. The jury was entitled to look at the total record and decide whether Sansom's mere presence next to Parker was justification for Appellant to use deadly force against Sansom based on the claim that Appellant "reasonably believe[d] the deadly force [was] immediately necessary . . . to protect [Appellant] against [Sansom's] use or attempted use of unlawful deadly force." *See* Tex. Penal Code § 9.32(a)(2)(A). Looking at the record as a whole, the jury's decision—to find that Appellant intentionally or knowingly caused Sansom's death and to reject his offered justification of self-defense—was clearly rational.

Accordingly, we overrule Appellant's sole point.

## IV. Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 7, 2026

12